UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONTANA RETAIL STORE EMPLOYEES HEALTH AND WELFARE PLAN, NICOLAI COCERGINE, and DANNY MA,<br><br>Plaintiffs,<br><br>v.<br><br>C&S JONES GROUP LLC,<br><br>Defendant. | CASE NO. 2:23-cv-01342-JNW<br><br>ORDER GRANTING DEFAULT JUDGMENT |

## 1. INTRODUCTION

Before the Court is Plaintiffs Montana Retail Store Employees Health and Welfare Plan, Nicolai Cocergine, and Danny Ma's (collectively, Plaintiffs) motion for default judgment against Defendant C&S Jones Group LLC ("C&S Jones"). Dkt. No. 16. C&S Jones has not appeared in this action and did not file a response to the motion. *See generally* Dkt. The Court has considered the motion, the remaining record, and applicable law and GRANTS Plaintiffs' motion for default judgment.

ORDER GRANTING DEFAULT JUDGMENT - 1

## 2. BACKGROUND

Plaintiff Montana Retail Store Employees Health and Welfare Plan ("Trust") is a joint labor-management employee-benefit Trust, organized and operated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. Dkt. No. 19 ¶ 2. Rehn & Associates, a third-party administrator, maintains Trust records and administers benefits. *Id.* ¶ 3; Dkt. No. 17 ¶ 4. C&S Jones executed a collective bargaining agreement (CBA) with United Food and Commercial Workers Union Local No. 8, agreeing to pay monthly contributions to the Trust for covered employees. Dkt. No. 17 ¶ 5. The CBA details the basis for Trust contributions and bound C&S Jones to the Trust's governing documents, including the Trust Agreement, which require timely contributions and authorizes assessment of liquidated damages and interest on delinquent amounts. Dkt. No. 1 at 25, 39.

Although the Trust relies on employers to report the covered hours worked by their employees, it also conducts audits to confirm employers report properly. *Id.* at 41. A payroll audit covering January 1, 2018, through May 31, 2022, revealed that C&S Jones owed $60,621.98 in unpaid contributions, $125 in liquidated damages, and $29,993.56 in interest for the period. Dkt. No. 18 ¶ 4. *Id.* ¶ 5. C&S Jones failed to respond to the audit or pay the outstanding amounts owed. Dkt. No. 17 ¶ 9.

The Court entered an order of default on February 13, 2024, and C&S Jones has not appeared to defend this action. Dkt. No. 15. Additional interest accrued through April 30, 2024, totaling $10,911.93, bringing the total interest to $40,905.49. Dkt. No. 18 ¶ 11. The Trust has incurred $2,252.50 in attorney fees and

$482.00 in costs. Dkt. No. 19 ¶¶ 6–8. The total amount sought is $104,386.97. Dkt. No. 19 at 7.

### 3. DISCUSSION

**3.1  Legal standard.**

Under Rule 55, the default process occurs in two steps. First, if a defendant fails to plead or otherwise defend, the clerk of the court will enter an order of default against the defendant. Fed. R. Civ. P. 55(a). Second, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff. Fed. R. Civ. P. 55(b)(2). Entry of default judgment is left to the court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has established seven factors ("*Eitel* factors") for courts to consider when deciding how to exercise this discretion: (1) the possibility of prejudice to the plaintiff without a judgment; (2) the merits of plaintiff's claims' (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The Court considers true all well-pleaded factual allegations in the complaint that are unrelated to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(b)(6). Courts must ensure the amount of damages is reasonable and supported by the plaintiff's evidence. *See TeleVideo*, 826 F.2d at 917–18; *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171,

1178 (N.D. Cal. 2002) ("The evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."). And "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### 3.2    The Court has subject matter and personal jurisdiction.

Before entering a default judgment, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, there is no reasonable dispute that the Court has subject matter jurisdction over this matter. Plaintiffs filed this case to enforce their rights under federal law: namely, ERISA, 29 U.S.C. 1001 *et seq*. The Court also has personal jurisdiction over C&S Jones. ERISA authorizes nationwide service of process and provides that service on a defendant anywhere in the United States is sufficient to establish personal jurisdiction. *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing 29 U.S.C. § 1132(e)(2)).

Plaintiffs properly served C&S Jones within the period provided by Rule 4(m). *See* Dkt. No. 6. *See also* Fed. R. Civ. P. 4(m) (requiring service within 90 days after the complaint is filed). C&S failed to appear. Dkt. No. 12 at 2; *see also* Dkt. Accordingly, this Court has both subject matter jurisdiction over Plaintiffs' claims and personal jurisdiction over C&S Jones.

### 3.3    Plaintiffs are entitled to default judgment.

Considering the *Eitel* factors, the Court finds Plaintiffs are entitled to default judgment against C&S Jones.

ORDER GRANTING DEFAULT JUDGMENT - 4

### 3.3.1    Plaintiffs will face prejudice absent default judgment.

Under the first *Eitel* factor, default judgment is favored where "the plaintiff has 'no recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)). Here, despite service of process, C&S Jones failed to defend itself in this litigation. *See* Dkt. As a result, Plaintiffs will suffer prejudice if default judgment is not entered because they will "be denied the right to judicial resolution" of their claims. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Therefore, the first *Eitel* factor weighs in favor of default judgment.

### 3.3.2    Plaintiffs adequately plead their claims.

"The second and third *Eitel* factors, concerning the merits of the plaintiff's claim and the sufficiency of their complaint, are often analyzed together." *Amazon.com Inc. v. Zhi*, No. 2:20-CV-01215-TMC-MLP, 2024 WL 943465, at *2 (W.D. Wash. Mar. 4, 2024) (internal quotations omitted). The plaintiff must bring claims that cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). At the default judgment stage, the Court takes well-pleaded factual allegations in the complaint as true; however, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992), *superseded by statute on other grounds*.

Plaintiffs seek to recover unpaid contributions to a joint labor-management employee-benefit trust fund under ERISA. *See generally* Dkt. No. 1. Specifically, Plaintiffs bring two causes of action—they allege that C&S Jones violated ERISA Section 515, 29 U.S.C. § 1145, and breached the CBA and Trust Agreement rules by failing to make timely contributions. Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. In a case to recover delinquent contributions, if a court issues a judgment for a plan, it must award the plan the following:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Plaintiffs allege that C&S Jones is bound by the terms of the CBA, breached these terms by failing to submit contributions during January 1, 2018, through May 31, 2022, and thus owes contributions and late fees to the Trust. Accordingly, they adequately plead their first cause of action.

As to Plaintiffs' second cause of action, they allege C&S Jones is bound to the Trust Agreement and the Delinquent Accounts Policy, obligating it to make timely contribution payments. Plaintiffs also allege that, because C&S Jones has failed to

make timely contributions, they have breached the CBA and owe fees in accordance with the policy. Therefore, Plaintiffs have sufficiently established their second cause of action.

### 3.3.3   The sum of money at stake is proportional to the allegations against C&S Jones.

For default judgment to be appropriate, the recovery sought must be proportional to the harm caused by the defendant's conduct. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

Plaintiffs seek an award of $104,386.97 consisting of: (1) $60,621.98 in contributions; (2) $125 in liquidated damages; (3) $29,993.56 in interest for the January 2018 through May 2022 audit period; (4) $10,911.93 in interest accrued on the unpaid audit contributions from April 10, 2023, to April 30, 2024; (5) $482 in litigation costs; and (6) $2,252.50 in attorneys' fees. *See also* Dkt. Nos. 18 ¶ 9 (explaining assessment of liquidated damages), ¶¶ 10–11 (setting forth the formula for calculating interest on unpaid contributions); 19 ¶ 6–8 (certifying the litigation costs and attorneys' fees).

The Court finds that the total amount is proportionate to C&S Jones' conduct of failure to contribute as required under the CBA and Trust Agreement. Plaintiffs seek only the remedy under ERISA and the CBA, and thus the Court concludes that this is proportional to the harm caused by C&S Jones's conduct. Here, the fourth *Eitel* factor favors entry of default judgment.

### 3.3.4     There is no dispute about the material facts.

The fifth *Eitel* factor favors a default judgment if there is no dispute about the material facts of the case. C&S Jones failed to appear, and the Court must accept all well-pleaded allegations in the complaint as true, other than those related to damages. *TeleVideo*, 826 F.2d at 917-18. Nothing in the record suggests any factual disputes.

### 3.3.5     The record does not show excusable neglect.

There is no evidence before the Court that C&S Jones failed to appear due to excusable neglect. Instead, Plaintiffs provide evidence of proper service, yet C&S Jones have made no attempts to appear in this case after the Court instructed it to find proper counsel. Dkt. No. 12 at 2.

### 3.3.6     Public policy favoring a decision on the merits does not precludes default judgment here.

There is a preference for deciding cases on the merits, but this preference is not absolute. *PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). If the defendant's "failure to answer [a c]omplaint makes a decision on the merits impractical," the "preference to decide cases on the merits does not preclude a court from granting default judgment." *Id.* (internal citations omitted). Thus, the final *Eitel* factor favors entry of default judgment.

Because all the *Eitel* factors weigh in favor of default judgment, the Court concludes that default judgment is warranted and looks next at the recovery.

ORDER GRANTING DEFAULT JUDGMENT - 8

**3.4   The Court awards Plaintiffs $104,386.97.**

The Local Civil Rules require plaintiffs to support a motion for default judgment with "a declaration and other evidence establishing plaintiff's entitlement to a sum certain . . . ." LCR 55(b)(2). The plaintiff must provide a "concise explanation of how all amounts were calculated" and "[i]f the claim is based on a contract, plaintiff shall provide the court with a copy of the contract and cite to the relevant provisions." LCR 55(b)(2)(A).

Plaintiffs filed three declarations, which explain their damages calculations. First, Plaintiffs seek unpaid contributions equaling $60,621.98. The audit Summary of Unpaid Contributions supports this amount. Dkt. No. 17 at 75. Next, Plaintiffs request $125 in liquidated damages based on the rate in the Delinquent Accounts Policy. Dkt. Nos. 1 at 39 ("A $25 late fee per Trust will be assessed against each delinquent employer following the first instance of delinquency"); 18 ¶ 9. This $25 rate was assessed against C&S Jones five times for each year during 2018 to 2022 for a total of $125. *See* Dkt. No. 1 at 58. Plaintiffs also seek $40,905.49 in interest, which they calculated as: (unpaid contribution) * (1.5%) * (the number of past due months). Dkt. Nos. 1 at 39; 18 ¶ 10. At first, Plaintiffs calculated the interest through April 10, 2023, but later added interest owed through April 30, 2024, bringing the total owed to $40,905.49. Dkt. No. 18 ¶ 10. The Court concludes that these exhibits meet the requirements of the local rules to show how Plaintiffs arrived at the amount in damages requested.

Plaintiffs also request $2,252.50 in attorneys' fees and $482 in litigation costs. Plaintiffs argue they are owed fees and costs under the Trust Agreement,

Delinquent Policy as well as 29 U.S.C. § 1132(g)(2). Specifically, the Trust Agreement, Delinquent Policy provides:

> In the event the Plan commences a lawsuit against an employer which is delinquent in payment of its required contribution, additional liquidated damages . . . or the amount of interest . . . shall be imposed upon the delinquent employer. The delinquent employer shall also be liable for reasonable attorney fees and costs incurred in the collection process.

Dkt. No. 1 at 40.

Plaintiffs' counsel states that she spent 5.7 hours and her paralegal spent 6.4 hours on this matter from August 29, 2023, through April 29, 2024, and provides a spreadsheet of time entries. Dkt. No. 19 ¶ 8. *See also* Dkt. No. 19 at 4–5. Their billable rates are $285[1] and $100 per hour, respectively. The Court finds that the billing rates, tasks performed, time spent, and litigation costs are reasonable and recoverable. Plaintiffs may recover the $2,252.50 in attorneys' fees and $482 in litigation costs it seeks from C&S Jones.

## 4. CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' motion for default judgment and AWARDS them damages of $104,386.97, as follows:

- $60,621.98 in contributions;
- $125 in liquidated damages;
- $29,993.56 in interest for the January 2018 through May 2022 audit period;

---

[1] On December 31, 2023, Plaintiffs' counsel's hourly rate increased from $280 per hour to $285 per hour. Dkt. No. 19 ¶ 7. Her entries reflect this change.

- $10,911.93 in interest accrued on the unpaid audit contributions from April 10, 2023 through April 30, 2024;
- $482 in litigation costs; and
- $2,252.50 in attorneys' fees.

Dated this 11th day of March, 2025.

*Jamal W.*

Jamal N. Whitehead
United States District Judge